UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20628-CR-GRAHAM

UNITED STATES OF AMERICA

vs.

DEMARCUS ANTAWN MORMAN and
DAVAUS LEANARD MCCOWN,

    Defendants.
_____/

## UNITED STATES' TRIAL BRIEF

At the calendar call held on October 7, 2010, the Court requested that the United States submit a summary of the evidence it expects to offer against defendant Davaus Leanard McCown ("MCCOWN") by Wednesday October 13, 2010. In response to the Court's request, the United States, by and through the undersigned Assistant United States Attorney, hereby files this Trial Brief summarizing the evidence it would present at the upcoming trial in this matter in addition to a discussion of evidentiary issues that it anticipates may arise at trial.

### I.     FACTUAL BACKGROUND

If this matter proceeds to trial, the United States anticipates calling a number of law enforcement witnesses to establish that defendant MCCOWN, a convicted felon[1], knowingly possessed the firearms and ammunition charged in the Indictment during a deal to sell those firearms and a bullet-proof vest to an undercover Miami Dade police officer (the "UC") on August 3, 2010. As summarized below, the United States will offer the following evidence against MCCOWN if he proceeds to trial: (1) evidence regarding MCCOWN's arrival at the scene of a firearms deal in the

---

[1] If MCCOWN opts not to stipulate to his felony convictions, the United States will offer certified copies of his prior convictions into evidence.

passenger seat of a car driven by co-defendant MORMAN; (2) evidence of MCCOWN's close proximity inside the vehicle to ammunition and a semi-automatic pistol; (3) the firearms, ammunition and bulletproof vest recovered from the scene; (4) MCCOWN's post-arrest statements in the back of a police patrol car revealing his knowledge of the items in the vehicle; and (5) MCCOWN's post-*Miranda* statement to law enforcement stating that he owned the rifle and the bullet-proof vest in MORMAN's trunk and that he knowingly participated in the firearms deal.

### A.     The Firearms Deal

On August 3, 2010, a confidential informant (the "CI") called MCCOWN's co-defendant MORMAN with the UC listening in to set up a purchase of firearms and a bullet-proof vest. Later that day, the UC and the CI waited for MORMAN inside an Applebee's restaurant in Miami-Dade County. MORMAN arrived at the Applebee's in a vehicle registered to his mother with MCCOWN sitting in the front passenger seat, and a minor Hispanic male named Wesley Vazquez in the back seat. MORMAN exited the vehicle and met with the UC and CI inside the Applebee's. The CI and the UC, posing as a buyer from Orlando, Florida, negotiated with MORMAN to purchase a rifle, a semi-automatic handgun and a bulletproof vest. The UC agreed to meet MORMAN at his vehicle to purchase and take possession of the items. MORMAN returned to his car and reentered on the driver's side. After MORMAN entered the car, the minor male, Vazquez, exited the vehicle and began looking around to see if anyone was watching. The UC then notified the other law enforcement officers on the scene that there were weapons in MORMAN's car. At trial the United States will establish these facts through testimony from the UC and the officers on the scene involved in the surveillance of the deal.

A marked patrol car pulled up in front of MORMAN's car and he tried to get away at which

point he ran into an unmarked vehicle driven by an agent from the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF"). MORMAN and MCCOWN then opened their doors and fled on foot at a high rate of speed towards a nearby Home Depot, where they were apprehended.[7] To establish these facts the United States will offer testimony from the officers that pursued and arrested the defendants.

After the defendants were taken into custody, the law enforcement officers returned to the vehicle and observed, in plain view, a Smith & Wesson 9mm semi-automatic pistol lying on the front driver's side floorboard. The agents then searched the vehicle and recovered a sock in the cupholder next to where MCCOWN had been sitting filled with eight (8) rounds of Winchester 9mm ammunition, three (3) rounds of Cor-Bon 9mm ammunition, and three (3) rounds of Federal 9mm ammunition. In the trunk, the agents recovered a Norinco 7.62 caliber semi-automatic assault rifle and a bullet-proof vest. The rifle was loaded with a magazine, which contained one round of Wolf 7.62 caliber ammunition and ten (10) rounds of A.R.E. 7.62 caliber ammunition.[8] To establish these facts the United States will offer the firearms, ammunition, and bullet proof vest into evidence. Additionally, the United States will offer photographs of the scene and testimony from the officers and ATF agents involved in searching the vehicle containing the weapons and ammunition.

---

[7] MCCOWN's flight may be used as substantive evidence of guilt. *See United States v. Wright*, 392 F.3d 1269, 1277-78 (11th Cir. 2004) (recognizing that 'evidence of resistance to arrest and flight is admissible to demonstrate consciousness of guilt and thereby guilt") (citation omitted).

[8] Both firearms and all of the ammunition were manufactured outside the state of Florida and thus traveled in interstate or foreign commerce. In the event that MCCOWN contests this element of the offense, the United States will offer expert testimony from ATF Special Agent Josh Murr.

### B. MCCOWN's Admissions in the Back of Police Patrol Car

After MORMAN and MCCOWN were arrested, they were placed in the back of a marked patrol vehicle along with Vazquez, where their conversation was secretly recorded. During this conversation, MORMAN and MCCOWN made several incriminating statements. Specifically, MCCOWN admitted to his knowledge that the semi-automatic rifle and bullet-proof vest were in the car. To establish these facts the United States will offer the testimony from the officer who maintained the recording device in the patrol car, and from the ATF agent and Detective who later interviewed MORMAN and MCCOWN and are able to recognize their voices.

### C. MCCOWN's Post-Arrest Statement

MCCOWN was read his *Miranda* rights from a standard form which he waived verbally and in writing. MCCOWN initially stated that he was called by MORMAN to accompany him to the Applebee's and that he knew about all the firearms and ammunition in the vehicle. MCCOWN stated that the rifle and bulletproof vest in the trunk were his but claimed that he had never touched them.[9] He further stated that MORMAN had come to get the rifle and the vest from him earlier that day but that he did not have them with him at the time. MCCOWN stated he took MORMAN to his "homeboy's house" to retrieve the rifle and vest. MCCOWN admitted to his participation in the

---

[9] This statement by itself is sufficient to conclusively establish MCCOWN's possession of the firearms even if it is true that MCCOWN intentionally avoided touching the items at the time of the deal. "Possession may be actual or constructive, joint or sole." *United States v. Gunn*, 369 F.3d 1229, 1235 (11th Cir. 2004) (citations omitted). "A defendant has constructive possession if he exercises ownership, dominion, or control over the firearm. A defendant also has constructive possession if he has the power and intention to exercise dominion or control. The defendant may exercise that dominion and control either directly or through others." *Id.*

firearms deal and stated that he believed that he would only be paid approximately $100.[10] To establish these facts at trial, the United States will offer a copy of MCCOWN's signed *Miranda* waiver and testimony from the ATF Special Agent who interviewed MCCOWN regarding the substance of his confession.

## II.     EVIDENTIARY ISSUES

Although the United States believes that all of the evidence outlined above is clearly admissible at trial, in an effort to assist the Court it will highlight some of the evidentiary issues that may arise at trial below.

### A.     Inextricably Intertwined Evidence

As described in detail above, MCCOWN's possession of the firearms and ammunition was inextricably linked with his participation in an anticipated firearms deal with a Miami Dade UC. Although the Indictment does not charge MCCOWN with conspiring with MORMAN, the evidence of the firearms deal is clearly "inextricably intertwined" with MCCOWN's possession of the firearms in the vehicle and, thus, falls outside the scope of Federal Rule of Evidence 404(b).[11]

---

[10] MORMAN also gave a post-*Miranda* statement. In that statement he stated that the rifle and vest belonged to MCCOWN. The United States acknowledges that these statements would not be admissible against MCCOWN unless MORMAN opted to testify at trial. *See Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620 (1968).

[11] The United States recognizes that MORMAN's statements may not be admissible as a statement by a co-conspirator under Federal Rule of Evidence 801(d)(2)(E) and would not seek to offer them to prove the truth of the matter asserted at trial. Rather the United States simply intends to elicit testimony that: (1) the UC met with MORMAN at Applebees to purchase firearms; (2) MORMAN returned to his vehicle; (3) the UC was going to meet MORMAN back at his vehicle containing MCCOWN and Vazquez to retrieve the firearms; and (4) before the deal was consummated marked patrol cars came to detain MORMAN and MCCOWN leading them to flee.

Evidence of prior acts is not extrinsic under Rule 404(b) if it (1) arose out of the same transaction as the charged offense, (2) is necessary to complete the story of the crime, or (3) is inextricably intertwined with the evidence about the charged offense. *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008). Thus, "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)). Critically, "evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'" *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)).

The evidence of the UC's meeting with MCCOWN and the circumstances leading up to MCCOWN's arrest are clearly inextricably intertwined with the charged offense. First, those facts are closely linked in time with MCCOWN's arrest on the felon-in-possession charge in the Indictment and explain the "context, motive and set-up" of MCCOWN's offense which involved possessing firearms so they could be sold to the UC. *McLean*, 138 F.3d at 1403. Any natural account of the facts surrounding the offense would have to focus on the anticipated firearms deal. For instance, MCCOWN arrived with MORMAN to meet the CI to sell guns and the reason the vehicle he was traveling in was full of firearms and ammunition was so they could be sold to the UC. MCCOWN was only arrested after MORMAN returned to the vehicle to execute the deal. Most

importantly, MCCOWN's own post-arrest statements detail his knowledge and participation in the anticipated firearms deal. In sum, it is virtually impossible (if not impossible) to describe the facts surrounding MCCOWN's offense without describing the anticipated firearms deal with the UC. Thus, this evidence is clearly inextricably intertwined with MCCOWN's indicted conduct.

Similarly, although MCCOWN is not separately charged with possessing the bullet-proof vest, this evidence also forms an integral part of the charged offense and is highly probative as to whether MCCOWN knowingly possessed the firearms in the vehicle. Indeed, MCCOWN's own post-arrest statements focus on the vest. In a recorded statements in the police patrol car after his arrest, MCCOWN refers to the police having found the rifle and the vest in the trunk. In his post-*Miranda* statement, MCCOWN further admits that the vest and the rifle belonged to him and that MORMAN recruited him to bring them to the deal. These statements highlight the integral link between the rifle and the vest found directly next to it in the trunk of MORMAN's vehicle. Accordingly, this evidence is also admissible under the inextricably intertwined doctrine.

   **B.**  **Rule 404(b) Evidence**

The United States believes this evidence identified in Section II.A is clearly outside the scope of Rule 404(b). Nevertheless, if the Court disagrees with the United States' position, it alternatively provides formal notice of its intent to use this evidence at trial (as previously set forth in its Response to the Standing Discovery Order). Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts" may be admitted "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," with respect to the charged offenses. Fed.

R. Evid. 404(b).[12] The Eleventh Circuit has recognized that Rule 404(b) is a rule "of inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity. The list provided by the rule is not exhaustive and the range of relevancy outside the ban is almost infinite." *United States v. Stephens*, 365 F.3d 967, 975 (11th Cir. 2004) (quoting *United States v. Cohen,* 888 F.2d 770, 776 (11th Cir. 1989)) (internal quotation marks omitted); *accord United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) ("Rule 404(b) is a rule of inclusion, and [] accordingly 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case."). For evidence to be admissible under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof so that the factfinder could find that the defendant committed the extrinsic act; and (3) the evidence must possess probative value that is not substantially outweighed by undue prejudice. *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992).

Once again, the United States believes that evidence identified in Section I.A is intrinsic to the charged offense. Nevertheless, it also meets the standard for admissibility under Rule 404(b). With respect to the first prong of the analysis, the evidence regarding the firearms deal and the bullet-proof vest has little bearing on MCCOWN's character and is clearly relevant to MCCOWN's knowing possession of the firearms and ammunition charged in the Indictment. Specifically, it is probative of his knowledge that he was in possession of the firearms, the absence of any mistake, and his motive for possessing the weapons.

As to the second prong, the evidence previously identified by the United States is more than

---

[12] *United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009) (Rule 404(b) straightforwardly provides for the admission of evidence of "other crimes, wrongs, or acts" and is not limited to criminal acts.")

sufficient for a factfinder to conclude that MCCOWN was participating in a firearms deal involving a bullet-proof vest based upon the circumstances preceding his arrest and his own post-arrest statements referencing his knowing participation in the deal and his ownership of the vest.

Finally, the probative value of this evidence is not substantially outweighed by any undue prejudice. As previously mentioned this evidence is highly probative of whether MCCOWN committed the offense charged in the Indictment. MCCOWN is already charged in the Indictment with possessing two firearms and a selection of ammunition. Any additional prejudice he might endure from evidence that he possessed these weapons as part of a firearms deal is marginal and certainly does not outweigh its high probative value. Therefore, in the event the Court disagrees with the United States' analysis is Section I.A, this evidence is separately admissible under Rule 404(b).

### C.     MCCOWN's Flight is Admissible as Substantive Evidence of Guilt

Finally, the United States submits that MCCOWN's flight from law enforcement at the time of his arrest is admissible as substantive evidence of MCCOWN's guilt. "[F]light is an admission by conduct." *Wright*, 392 F.3d at 1278 (11th Cir. 2004) (quoting *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977). "The probative value of flight evidence depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Id.* In this case the United States can easily establish the necessary chain of inferences. MCCOWN exited the car and ran from law enforcement just as he and MORMAN were about to execute a firearms transaction with the UC. Thus, MCCOWN's flight

is immediately linked with the charged offense. Accordingly, the United States believes this evidence is admissible at trial to establish MCCOWN's guilt of the charged offense.

## III. CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court issue a pre-trial ruling holding the above-referenced evidence admissible at the upcoming trial in this matter.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: /s/Michael J. O'Leary_____
Michael J. O'Leary
Assistant United States Attorney
Court ID No. A5501261
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9131
Fax: (305) 536-4699

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court and all counsel of record using CM/ECF on October 11, 2010.

s/Michael J. O'Leary
Michael J. O'Leary
Assistant United States Attorney
